representing the appellants. We're here on three distinct legal issues, a motion to dismiss on personal jurisdiction, a granting by the District Court of a 12B6 on preemption applying a Louisiana state statute, and a forum nonconvenience analysis. Because the second issue, I think, necessarily controls the first, I'd like to start with that. This Court's review of the Louisiana statute, 9-5606, is de novo. The District Court applied a one-year period to appellants' claims of insurance agent malpractice. And we believe and submit that the interpretation afforded to 9-5606 by the District Court is an error. And it's an error and essentially rules out, Your Honors, what the statute says. The statute provides for two distinct time periods. It reads and says within one year from the date of the alleged act, omission or neglect, or within one year from the date that the alleged act, omission or neglect is discovered or should have been discovered. And what we believe that the District Court's in question, November 17th, 2019, and ran one year from that. That would be applicable if, for instance, in these particular facts, the agent hadn't procured a policy as expected on November 17th, 2019. I could certainly understand the one year starting then. But what the District Court is ignoring is that we have a very peculiar factual circumstance. In 2017, the agent was hired to get the policy. In 2019, when an actual risk or notice of loss was submitted, the insured found out we don't have a policy like we thought we had a policy. And then the record is replete with the various back and forth about that. A policy was acquired, the notice of claim was submitted, and the claim was adjusted. It wasn't until almost six months after, in September, more than six months, nine months after, in September of 2020, that the insured had any notice whatsoever that its primary general liability policy would not respond to this loss. And so I think what the District Court has done is asked a non-injured plaintiff to come to court on a claim that doesn't exist because there's nothing to sue about in November of 2019. There's been no decision. The insured is led to believe that this policy is going to respond. And I think that it's important to note the distinction. What the District Court applauded was this concept of constructive notice. Well, all of the cases involving constructive notice, Your Honors, are very simple and straightforward. For instance, this Court's decision in Campbell. Well, the Campbells sued their agent saying, you didn't get us flood insurance. Well, lo and behold, at the District Court, there was a letter that the Campbells had signed saying, we reject flood insurance. So obviously, if they thought they wanted flood insurance, they didn't get flood insurance. The date that they signed that letter would start the one-year period. The same or similar facts applied in Ruiz. In the case of Jambone, which was another application of constructive notice, the insured asked for contents insurance, said, we want you to insure the contents of my home. The policy clearly did not include that coverage. There were no contents listed. And so the constructive notice doctrine applies. In the Ruiz case, the insured had said, I don't want my limits to be, I think it was 91,000, I want them to be 120,000, and sued the agent because the agent didn't increase the limits. Well, when the insured got the policy, the limits were clearly stated on the first page. Here, what the District Court is doing is, I think, the essence of our claim. Our claim is that the insurance company here, and possibly because of the weird circumstances under which the policy was procured, has decided to treat a primary general liability policy as a true excess policy. That is not what the plaintiffs bargained for. That's not what they alleged they purchased. That's why the agent is included. And, Your Honors, the first time that any reasonable person could have had their attention excited that the insurer would use a standard that's in all general liability policies. It is the constant in all general liability policy forms. If there are two general liability policies, each one wants to try to be excess. And there's lots of Louisiana law, I'm sure there's lots of Texas law for Judges Willett and Oldham, that say when you have that conflict, they share. And so that's essentially what our claim is about. On the personal jurisdiction issues, Your Honor, I think the District Court applied a higher standard, especially at the preliminary stage. For jurisdictional purposes, on the alter ego claim, a close relationship is enough. And we didn't cite these in our brief, but that's old Fifth Circuit case law, Walker v. Nugent, 583 Fed 2nd 163, and product promotion Inc. v. Cousteau, 495 Fed 2nd 483. You didn't cite them in your brief. Why are you citing them now? Well, Your Honor, it's the principle that is espoused in Dixon, I believe, that is the, it's close relationship, which Dixon... The point is, if it existed when you briefed the case, why are you giving us cites on something now? I missed it, Judge, to tell you the truth. And I don't think it's decisional in the sense that the Dixon case is, talks about the plus factor for jurisdictional purposes. I think my point is that there's a distinction between alter ego for imposing liability and alter ego for imposing or imputing context for jurisdictional purposes. And we think in Dixon, the plus factor is met here. We believe, at this stage of the pleadings, we've made a prima facie case which would require the district court to deny the motion. We have 100% ownership of two satellites, two Marsh satellites. We have references that these are integrated satellite offices that function together in a way to provide global insurance solutions. We have common officers between Marsh-McLennan and Marsh-USA. We have common accounting in their 10-K filings. We have authority over general policy. And here's where I sort of take issue with how do we get to the next stage, and this is why I think it's important to remember when the district court made this decision. Ultimately, Marsh-McLennan may be right. They may not so closely control the operations of Marsh-USA to impute context. But how do we know that without any discovery? We asked the district court for limited discovery on that issue. There's almost no way for a bystander like my clients to determine how closely those companies are integrated. It's clear on this fact pattern, Your Honors, that Marsh-USA worked with another wholly owned subsidiary of Marsh-McLennan in Saudi Arabia to deliver a global insurance product. How did that happen? We submit, Your Honor, that the context in this case can be imputed, or at a minimum, the case should be remanded for jurisdictional discovery on that issue. What is your best case for that? What is your best case for that, that the notion that these jurisdictional contacts of Marsh-USA can be imputed? I think, Judge, it's got to be the Dixon-Penalpina case. It's got to be the plus factor. It's got to be the fact where the objective facts here suggest something more than just total independence and it's not just, you know, it goes to those alter ego factors that's cited in that case, Judge. There's a slight distinction. Hargrave, which was relied on by the district court, actually applied Texas's factors. This is a Louisiana case. Louisiana factors are similar, but I think it's, I believe, Jackson versus Giuseppe Tanfoglio, Judge Willett, that talks about the Louisiana factors. And so I think knowing where we are under the motion to dismiss stage that we should at least be entitled to jurisdictional discovery on that. My final point, Your Honors, is concerning the forum nonconvenience analysis. And here, I have to respectfully disagree with my able opponent. The issue really boils down to how this Court's going to look at the issue. We submit that it is very clearly a de novo review. It is not an abusive discretion review. The essence of our challenge is the district court's legal determination to not do a full forum nons analysis. The district court did not balance private and public interest factors because the district court found as a matter of law that the Louisiana statute, which invalidates the forum selection clause, did not apply. And so, really, we believe that analysis is subject to this Court's de novo review. We are not challenging a district court's weighing of the competing factors. We're saying you should have conducted an analysis that includes using the Louisiana statute 22-868. And on that point, here's another interesting, or at least what I would submit, is a decisive statutory use of words. The Louisiana legislature has used the words, no insurance contract delivered or issued for delivery in this state. Okay? Under the district court's analysis, we're only talking about pure delivery. There is an or, and it contemplates two separate and distinct situations. You can have delivery in the state of Louisiana, or issued for delivery in the state of Louisiana. And very clearly, I submit that the record reflects that there's at least a disputed issue of fact as to Marsh KSA's dual agency in this particular situation. But issued for delivery in the state is exactly what we have here. And the district court used the McDermott case to, I think, read that out. But McDermott, Your Honors, is correct in that it's so factually distinguishable as to not have any sort of weight. In McDermott, there was no issue over who the broker was asking for. There was no dispute over agency. The broker was 100% acting for the insured. The policy was actually physically delivered in London, England. And somehow a photocopy of the policy ended up in Amelia, Louisiana at McDermott's office much later. Yes, in that circumstance, I would say that doesn't meet the requirement of statute delivered or issued for delivery. But those aren't these facts. We have, and we have alleged, and we provided enough facts to at least get some deference at the district court level, that this particular policy was issued, sent into Louisiana by this insurance company. And so I believe, Your Honors, that the forum nonconvenience analysis is fundamentally, was fundamentally wrong because it didn't balance any of the private interest factors. The, you know, based on the Atlantic Marine decision by the Supreme Court, I understand there's a, you know, there's this debate as to what exactly a forum nonconvenience challenge is. And my worthy opponents go to the record doc and what they brought, they brought it, they brought that motion under Rule 12b-3 or 12b-6. And again, the question is not, are the appellants absolutely right? It's using the standards under the Rule 12b-3 review. Did we present enough to get us past that initial stage? And I would submit that we did. And the Brass-Petro case and the case of the Seventh Circuit, the Jackson v. Payday Financial, talk about the standard of review and we would rest on that. The district court's factual finding that the policy was delivered in the Kingdom of Saudi Arabia, that is not something that this Court has to give deference to. It's not its abusive discretion standard because it is fundamental to the factual allegation by the appellants that the policy was delivered in the state of Louisiana. And there were enough facts in the record, both in the complaint, the amended complaint, and in what we submitted to justify that allegation. So under the district court's interpretation, I believe issued for the delivery as read out, there's a lot of focus on a postdated broker's letter of authorization. It's done well after the fact. It was done at the request of the insurance company. It doesn't say Marsh KSA can accept the policy on behalf of the insured. It simply authorizes an exchange of information. I don't want to get down in the factual weeds and see that my time is running out. I want to reserve the rest for rebuttal. But if Your Honors have any questions, I'm happy to address them and cut into my rebuttal. Well, you're fine. You've reserved your time. Thank you. Thank you, Judge. We'll hear first from Mr. Hannon. Your Honor, I think you may have that reversed, and that may be our error. Mr. Teske for Marsh was planning to get first, but that's acceptable. All right. No worries. They were listed as I said them, but no problem. One of the Christophers should come forward. Just to make it a little more confusing, Your Honor, I'm Christopher Teske, and I'm here on behalf of Marsh & McLennan Companies and Marsh USA as appellees. Your Honors, Appellant's counsel tells you that on the preemption issue, the district court impermissibly read out the or in the statute. Marsh submits that it is actually the appellees who are impermissibly reading out a portion of 956.06, and the portion that they are reading out is the three-year absolute time bar for claims against an insurance agent for professional malpractice. 956.06 provides two time periods. One, you must file suit within a year of the act, error, or omission that causes the damage, or within a year of when you discovered that act, error, or omission, or should have discovered it. But two, in any event, you must file suit within three years after the act. And because the Louisiana courts have held that the statute and both time periods are preemptive in nature, it operates as an absolute time bar on claims after the three-year period has expired. Why is that important in this case? Well, it's important in this case for the exact factual scenario that Appellant's counsel outlines in his argument before this Court. He tells you that his clients asked for an insurance policy with an inception date in 2017. That is indeed an uncontested fact in the record below. They discovered later in 2019 that the policy was never issued, and in fact it was issued retroactively when they asked a question about it, and they finally got a copy of it in November of 2019. Now, the district court said when you got the copy of it in November of 2019, you had all of the information that you needed to excite your attention as to whether you had gotten the policy that you asked for way back in 2017. And so you should have analyzed that situation at that time and discovered whether there was an error on the part of the agent or not. And that means you should have filed suit within one year of November of 2019 when you got a copy of the policy. That decision is fundamentally correct, and it doesn't read out the or as they suggest because they are presuming that the error occurred either when they got the policy in 2019 or when they got a denial letter from the insurance carrier that issued the policy sometime later in September of 2020. That's not correct, and that turns the statute of limitations, the preemption statute that's at issue here, on its head because it would make operation of the statute fundamentally reliant on acts by a third party that might never happen. That's not how the statute is intended to work, and it's not how the preemptive period under Louisiana law is intended to apply. The preemptive period is intended to say insurance agents conduct activities and acts on behalf of their customers. Dynamic, allegedly, in this case. And when they do, it is up to the customer under Louisiana law to review the policy and make sure that they have gotten what they ordered, and if they have not, it is then further up to the customer to say something within a year after they discover that they don't have what they wanted or at the very latest within three years. Now, that brings us back to the important time periods. This is a request for coverage to start in 2017. The appellants in this case tell you, and the record is clear, that although they paid a premium for that coverage to Marsh in the Kingdom of Saudi Arabia in 2017, they didn't get a copy of the policy. This is a sophisticated appellant, Your Honors. This is someone who buys insurance regularly and should know that when you pay a premium for an insurance policy, you should expect to receive a copy of that policy. When they didn't receive a copy in 2017 or in 2018, that should have excited their attention, the fact that something might be wrong, and it started their time period to file suit against Marsh KSA and any of the other Marsh defendants for failure to procure the policy that they had asked for. But they didn't do that. They waited until 2019 when a claim came in and then asked the question, where is our policy? And having done so, they discovered that the policy had never been issued. Upon that discovery, they clearly had a year to file suit. And the fact that they waited longer than a year means that they are simply time-barred. They are out of luck. And the district court correctly decided that that was the case because, at a minimum, they filed more than a year after they discovered the true facts, and they likely filed more than three years after the act, error, or omission was committed. And so on both grounds, this court should affirm the preemption decision by the district court. Now, having said that, it is unlikely that the court needs to consider or discuss the question of personal jurisdiction against Marsh & McLennan Companies, the parent company at issue in this case. But in the event that the court chooses to do so, it is important to note that the appellant's allegation is that there is some plus factor here. They tell you, Judge Willett, that the best case for them is Dixon, and that if you look at the plus factor, the fact that there is 100% ownership of the two Marsh satellites, which they don't specify in their argument, but presumably they mean Marsh USA and Marsh Kingdom of Saudi Arabia. What we've talked about is Marsh KSA in this instance. Because there is 100% ownership of those, because there are common officers, and because there is common accounting in the form of a 10-K form filed with the Securities and Exchange Commission in the United States, there must be enough commonality between those parties to support the idea that the acts of Marsh USA, which reach Louisiana, can be imputed to its parent company, Marsh & McLennan Companies. That's simply not the complete analysis, Your Honors. And it's not the complete analysis for several reasons. First, none of those facts were alleged in the complaint below, nor were they alleged or asserted in the oppositions to the motions to dismiss in the district court. Their position was the folks at Marsh all used the same e-mail address. Marsh appears to operate, although we have no evidence to prove that they operate, as a single business enterprise. And therefore, we get to go past the level of the individual Marsh agencies that we worked with and impute their actions and their obligations to their parent company. Dixon simply doesn't allow that. Dixon requires a showing of more. Dixon requires them to demonstrate that there is actual control by the parent company over the subsidiaries, and that there is a plus factor, none of which is demonstrated in the complaint or in the pleadings and motion practice that happened in the district court in this case. And for that reason, the district court correctly decided that in the absence of a plus factor, in the absence of something to show that these two companies were effectively joined and that there was some good reason to impute the operations and the actions of one to the parent, there was no personal jurisdiction in the district court over the parent company. Thus, the district court properly dismissed the claims against Marsh and McLennan Companies, not only because it found that those claims were preempted under Louisiana Revised Statute 956.06, but also because it correctly found that it had no reason to extend its personal jurisdiction to Marsh and McLennan Companies, an organization that never does business and never intentionally avails itself of the opportunity to do business in the state of Louisiana. Counsel, I want to make sure I understand. As to the Marsh entities, the district court ruled both under 12b-2 and 12b-6? As to one of the two, Your Honor. MMC. That's correct. As to MMC, Marsh and McLennan Companies, that's correct. It said it's both time-barred and we have no personal jurisdiction. So if there's no personal jurisdiction, that's a dismissal without prejudice. If it's time-barred, that's a dismissal with prejudice. That's correct, Your Honor. So what kind of dismissal did the district court order as to MMC? I believe the district court dismissed as to MMC with prejudice because it found that the claims were time-barred, Your Honor. So how can a district court do that? And specifically what I'm concerned about is if there's no personal jurisdiction over the entity, then the court can't reach the merits and dismiss with prejudice under 12b-6. Understood, Your Honor. And I think the answer to your question is that the district court laid those arguments out in the alternative and fundamentally concluded that the real action, the real question at interest, was not against MMC but was against Marsh USA, its subsidiary. And having found that, it said those claims are time-barred and, therefore, and I see my time has expired. May I briefly conclude? No, certainly. Continue. And because those claims are time-barred, not only do I have a personal jurisdiction problem, which would get it without prejudice dismissal, but I have no way to get through the subsidiary to get to the parent company and think that a valid claim would exist against them. And, therefore, under 12b-6, that would have to be dismissed as well. I believe that's the logic behind the way that the district court lays it out, and I think that fundamentally makes sense. For those reasons, Your Honors, we would ask the court to affirm the decision below. All right. Thank you, sir. Now from WALA. Good morning, Your Honors. May it please the court, this is the other Christopher Hannon for defendant and appellee WALA Cooperative Insurance Company, who is seeking affirmance of the district court's ruling below dismissing the claims against WALA for forum nonconvenience. And it's our position, Your Honors, that the district court's ruling, relying primarily on Judge Stewart's decision in the McDermott case, dismissing plaintiff's declaratory judgment action against WALA for forum nonconvenience, is to be affirmed because it's a very simple result. This case does not belong in Louisiana or the United States as a matter of contract, as a matter of law, and as a matter of practicality under the undisputedly complete record on forum nonconvenience that was before the district court. The plaintiff's arguments on this appeal are intended to confuse and inject irrelevancies to distract from the straightforward outcome and the straightforward analysis the district court conducted below under McDermott and the other governing jurisprudence. And just to set the context, the policy for which plaintiffs seek coverage declarations and for which they also seek declarations as to causation of the underlying casualty includes multiple Saudi Arabian forum and jurisdictional selection clauses, three of them throughout the policy. And those forum and jurisdictional selection clauses require resolution of any disputes as to coverage before the Saudi Arabian Insurance Disputes Committee, the IDCs as it's been abbreviated in the briefing. Again, the declaratory judgment action filed below by the plaintiffs sought coverage under a marine insurance policy that was issued and delivered in Saudi Arabia as mandated under Saudi law. Saudi law requires that any policy issued for coverage of Saudi subject matter has to be issued in the kingdom. It was also issued pursuant to the requirements of plaintiff's contract with their customer, which is the Saudi National Oil Company, Saudi Aramco. And that contract required explicitly that the policies procured by the dynamic plaintiffs in connection with the contract had to be, quote, in accordance with all Saudi Arabian insurance laws and regulations. And finally, just as a practical matter, the policy was procured to cover marine operations on Aramco subsea pipelines in the Arabian Sea, which is within the territorial waters of Saudi Arabia. Ultimately, plaintiff's declaratory judgment action below was an improper attempt at forum shopping around the jurisdictional requirements that they had freely acquired in their policy. The Saudi forum and jurisdiction was undisputedly mandated by the policy that they accepted from Saudi insurers via their Saudi brokers, plaintiff's Saudi brokers, in accordance with Saudi insurance law and subject to resolution in the Saudi IDCs. The sole argument plaintiffs raised below with respect to forum nonconvenience had to do with their argument that Louisiana Statute Section 22868 somehow applies to this policy and invalidates the otherwise undisputed Saudi Arabian forum and jurisdictional selection clauses. The basis on which they assert that Section 22868 applies is the argument that Marsh Saudi Arabia, Marsh KSA as they've been referred to in the briefing, was somehow acting as a dual agent for both the plaintiffs and for the insurers. And I want to start there because, as we've said in our briefing, the dual agency argument is a red herring because even if they were dual agents, it wouldn't change the outcome. Assuming that they were agents both for the plaintiffs and for the insurer, our client, WALA, does not change the fact that WALA delivered the policy to Marsh KSA in Saudi Arabia on behalf of the plaintiffs. They delivered the policy to Marsh KSA in Marsh KSA's capacity as the agent for the plaintiffs. Plaintiffs argued in their initial argument that the McDermott case is somehow distinguishable and wrote it off as if it's clearly distinguishable. Our position, Your Honors, is that Judge Stewart's decision in McDermott is 100% directly on point. The facts are clearly the same. I'm going to read from the McDermott decision just briefly to show how it's the same. McDermott's agent, which would be in this case the plaintiff's agent, negotiated in London, which in this case would be in Saudi Arabia, with London insurer's representatives, which in our case would be WALA's representatives in the Kingdom of Saudi Arabia. The parties did not comply with Louisiana standards for issuing insurance. The same is true here because this policy is governed by Saudi regulations, Saudi law as to issuance and coverage. Lloyd's, in this case WALA, is not licensed to transact insurance business in Louisiana. The same is true here for WALA as reflected in the declarations that WALA issued below. Lloyd's, in this case WALA, gave the policy to plaintiffs' agents in Saudi Arabia, not Louisiana. The policy was marked dated in London in the McDermott case. In our case, the policy is marked dated in Riyadh, Saudi Arabia. After the heading, policy in the name of, in the McDermott case, was listed McDermott and their broker. In our case, the policy lists Dynamic Saudi Arabia and Marsh KSA as their broker. McDermott is 100 percent on point and totally indistinguishable on the full form nonconvenience record that the district court considered below. Additionally, Section 22868 doesn't apply for multiple other reasons that the district court did not reach below. And those reasons are before the court here because they appear in the record and they're pure issues of law. But before I get to these other issues, I do want to circle back to plaintiffs' position on the standard of review. The standard of review for a form nonconvenience dismissal under Atlantic Marine, the Supreme Court decision Atlantic Marine, is clear at a high level. The appellate court applies de novo review to whether a form jurisdiction clause, a form selection clause in the contract is applicable, and then applies clear error review to the district court's application of the public interest factors under Atlantic Marine. Where it gets a little more convoluted in this case, and frankly because the plaintiffs have convoluted it, is how does the deference factor, how does deference apply to the district court's factual findings in the context of the public interest factors? In our position, and Judge Stewart, if you'll indulge me, there's a case that we did not cite in our brief, in part because it wasn't clear from plaintiffs' recitation of what the standard of review was, what their argument precisely was on standard of review. But this court in DeGioia v. Magra Petroleum, 935F3381, said very clearly, quote, it is a venerable principle that a district court's factual findings are reversed only if clearly erroneous. Even when an appellate court considers a legal question de novo, that plenary power of review, the de novo power of review, does not extend to subsidiary factual findings. It's our position that in this case, the district court made subsidiary factual findings with respect to agency, with respect to where the policy was issued and delivered, that are subject to clear error review under the Atlantic Marine de novo, hybrid de novo, and clear error review standard for a form of nonconvenience dismissal. That's consistent with the general principle that a district court's factual findings are always subject to abuse of discretion, clear error review on appeal. Separate and apart from that, though, even if the court were to conduct a de novo review, we still think the fully admittedly complete record on form of nonconvenience supports the district court's dismissal. And separate from that, even if this court disagrees that the policy was issued and delivered in Saudi Arabia to a plaintiff's Saudi Arabian agent, Section 22868 doesn't apply for multiple additional purely reasons of law, perhaps the most simple of which is pursuant to Louisiana Revised Statute Section 22851, the entirety of the Louisiana Insurance Code Chapter 4, which includes 22868, the provision that arguably in some instances prohibits forum selection clauses, that Chapter 4 does not apply to ocean marine insurance under the plain terms of Section 22851. This policy is a policy of ocean marine insurance. This court's decision in Taylor versus Lloyds Underwriters, 972 F. Second 666, held, quote, a CGL policy insuring against certain maritime risks and losses provides maritime insurance. This policy is a CGL policy that includes a provision for marine craft insurance and that under the contract between plaintiffs and Saudi Aramco required coverage for marine operations involving marine craft. There's really no dispute in our minds, Your Honors, that this is a marine insurance policy. The only argument that the plaintiffs have made against that is that, oh, the label on the policy says it's a CGL policy. It doesn't say anything about marine. The Louisiana Revised Statute Section 2246, which includes the Louisiana definition of ocean marine insurance, specifically says ocean marine insurance includes insurance for marine risks, quote, regardless of the name, label, or marketing designation of the insurance policy. It doesn't matter what's on the name of the policy. If it covers marine risks, as this indisputably does, it's a marine insurance policy, and the provisions of Section 22868 do not apply. The same goes for foreign trade insurance. The same provision, Section 22851, prohibits 868 from applying to foreign trade insurance, which this policy also covers. My time's up, Your Honors. There are no questions from the panel. We respectfully request affirmance of the district court's decision on foreign non-communities. All right. Thank you, sir. Back to you, Mr. Ballot, for any rebuttal you have. I want to start with McDermott. By no means, Judge Stewart, am I suggesting that McDermott was wrong. McDermott was absolutely right on those facts. Really, you jest. And I think Judge Stewart will remember this. Because you had a situation where the parties were ordered to go to arbitration, went to arbitration. McDermott lost the arbitration. They came back here to enforce the arbitration award, and that's when somebody raised 22868 for the first time. That's not what we have here, Your Honors. And so I'm not saying McDermott's wrong. I'm just saying McDermott is not the guiding principle here. There was a quotation, or excuse me, my worthy opponent said that Marsh KSA is listed as the broker. They're identified on the policy as the producer. The producer has multi-meanings in the insurance business. And a producer like Marsh has a dual agency because they work with the underwriter. And that's evident in these peculiar circumstances. Because I was a little bit confused by Mr. Teske's argument about the three years. We're not here about a three-year case. Why aren't we here about a three-year case? Because the policy didn't get issued for two whole years. If this was a case about not getting the policy and not having a policy, although I think there are facts in the record that suggest that Marsh USA gave information to my client saying that they did have the policy in 2017, we'd be talking about a different thing. That's not what we're talking about here. We're talking about policy that was supposed to be issued in 2017, wasn't issued until after the insured said, I have a loss to report. And how that relates to all of these issues, I think, Your Honors, is the guiding principle. The leading treatise on insurance, Appelman, says that when a broker collects insurance premium and is entrusted with issuing the policy, that that broker is an agent of the insurer, not the insured. So we're not inventing new law here, Your Honors, and this is all in our briefs. And I think that's an important point because what did Marsh USA, Marsh KSA, and perhaps Marsh McLennan do in the two years between getting the policy premium in 2017 and actually binding the policy in 2019? Had they had no, I mean, it sort of boggles the mind. The insurance company gets asked, hey, we want you to issue a policy ex post facto for a loss that's already occurred that's going to be $10 million. And the insurance company just says, sure, go ahead. And on that point, Your Honors, I think the record is replete with the fact that, and this goes to the personal jurisdiction issue, my clients had almost zero communication with Marsh KSA. They hired Marsh USA. Marsh USA, who then said, hey, have we got the guys for you? We'll use our satellite office in Riyadh. We'll get this all done. And, Judge Willett, to your point, I think that it, and Judge Stewart, I did, we did cite Stewart v. Spademan, which is for the principle that the jurisdictional alter ego threshold is different. So I have to reverse myself. But it's the same cases that, same principle in the cases that I cited. Judge Willett, your case, I believe, that you asked me for would be either Jackson v. Tanfoglio, which talks about the factors, or the Walk Hadel case, which says that the district court can use jurisdictional discovery so that appellants, my clients, can find out how integrated Marsh. Your Honors can go to marsh.com. They can see. They don't say, hey, we have all these separate corporate entities that may not mingle. They say we have all of these satellites that give you this global solution. I want to close with the forum non-analysis because there's been a lot of presentation about how irrelevant this whole case is. That ignores all of the facts that I think, Your Honors, would allow a rendering of the denial of the forum non-convenience when the private interests and public interests are properly weighed. You have the Marsh entities that are not subject to a forum selection clause. You have the totality of private and public interest factors that support denial. You have the Gilbert Piper aircraft presumption for plaintiff's choice of forum. You have two companies that are U.S., one domiciled in New Orleans. You have negotiations in both 2017 and 2019 that are centered here in New Orleans. So this isn't just some, you know, as Mr. Hannan is worthy of opponent as he is, says, well, this is just all dealt with with something going on in Saudi Arabia. That ignores the fundamental nexus of this case. And with that, Your Honors, I'm out of time. All right. Thank you, Counsel. Both sides for your briefing and argument of the issues. This concludes the orally argued cases. They will be submitted along with the non-argued cases that are listed on today's docket. Having said that, the panel will stand in recess until 9 a.m. tomorrow.